IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRAD L. PARSONS,
    Plaintiff,

vs.                                    Case No. 5:06cv217/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB).

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.        PROCEDURAL HISTORY

        This suit involves an application for DIB under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401–34. Plaintiff's application was denied initially and on reconsideration (Tr. 15).[1] On October 24, 2005, following a hearing, an administrative law judge (ALJ) rendered a decision in

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on January 8, 2007 (Doc. 11).

which he found that Plaintiff was not under a "disability" as defined in the Act (Tr. 15–25). On August 25, 2006, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 4–6). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

II.    FINDINGS OF THE ALJ

On October 24, 2005, the ALJ made several findings relative to the issues raised in this appeal (Tr. 15–25):

1)    Plaintiff meets the nondisability requirements for a period of disability and DIB set forth in Section 216(i) of the Act and was last insured for benefits through March 31, 2005.[2]

2)    Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.

3)    Plaintiff's fibromyalgia, large incisional hernia with a history of abdominal surgery, and reversal of a colostomy, are considered "severe" based on the requirements in the Regulations, 20 C.F.R. § 404.1520(c), but Plaintiff does not have a severe mental impairment.

4)    Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5)    Plaintiff's allegations regarding his limitations are not totally credible.

6)    Plaintiff has the following residual functional capacity (RFC): he can perform a wide range of medium and light work activity on a sustained basis. He can lift or carry 50 pounds occasionally and 25 pounds frequently. He has no limitations in standing, walking, or sitting. He is limited in pushing or pulling with the extremities, and he can occasionally climb, balance, kneel, crouch, crawl, and stoop. He has no manipulative, visual, communicative, or environmental limitations. He does not have a severe mental impairment that more than minimally affects his ability to work.

---

[2]Thus, the time frame relevant to this appeal is August 11, 2000 (alleged onset) to March 31, 2005 (date last insured) (*see* Tr. 15, 24).

7) Plaintiff's past relevant work as a telemarketer and photo finisher did not require the performance of work-related activities precluded by his RFC (20 C.F.R. § 404.1565).

8) Plaintiff's medically determinable severe impairments, and his non-severe mental impairments, do not prevent him from performing his past relevant work.

9) Plaintiff was therefore not under a "disability" as defined in the Act, at any time through October 25, 2005, the date of the ALJ's decision (20 C.F.R. § 404.1520(f)).

## II.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the Plaintiff is not only unable to do her/his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the Plaintiff is performing substantial gainful activity, he is not disabled.

2. If the Plaintiff is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the Plaintiff is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the Plaintiff is presumed disabled without further inquiry.

4. If the Plaintiff's impairments do not prevent him from doing his past relevant work, he is not disabled.

5. Even if the Plaintiff's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the Plaintiff establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the Plaintiff's impairments, the Plaintiff can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the Plaintiff must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV. PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY[3]

   A.   Personal History

Plaintiff was thirty-nine years old with a high school education when the ALJ's decision was rendered. His past work experience includes employment as a telemarketer, photo finisher, and construction laborer. He alleges that he became disabled on August 11, 2000, due to memory loss, a speech impairment, headaches, blurred vision, respiratory problems, throat "closing" sensations, panic attacks, chronic fatigue, and fibromyalgia.

   B.   Relevant Medical History — Mental[4]

On August 8, 2002, Kris Lewandowski, M.D., a consultative examiner, reported that Plaintiff had a normal physical examination and no functional difficulty despite his vague complaints of nonspecific joint pains, finger numbness, muscle twitching, and poor memory. Dr. Lewandowski observed that Plaintiff had good communication skills, appeared comfortable, and changed positions without difficulty. He was able to bend back 90 degrees and had no problems sitting or walking. It was noted that Plaintiff drove himself, alone, to the examination. Plaintiff could tip toe, heel walk, and stand on one extremity with good balance bilaterally. He dressed and undressed himself without difficulty using both hands with normal grip and manual dexterity. He recollected facts from the distant and recent past without significant difficulty (Tr. 160–62).

Mary D. Tyll, Ph.D., conducted psychological consultative examinations on September 5 and 19, 2002. She noted that Plaintiff had no history of mental health treatment. She further noted that Plaintiff reported depression and anxiety symptoms, but his thought processes were logical, clear, coherent, and goal-directed. Plaintiff reported that he drove himself to the examination, lived alone, and had "no difficulties with activities such as feeding, dressing, grooming, bathing, shopping, laundering, or cooking."

---

[3]Unless otherwise noted, information in this section is derived from the opinion of the ALJ (Tr. 15–25).

[4]The court notes that the record contains evidence of Plaintiff's physical impairments, but Plaintiff has raised no issue in the instant appeal regarding the ALJ's consideration of his physical impairments. Thus, the summary of Plaintiff's medical history does not include any evidence regarding Plaintiff's physical impairments unless relevant to the issues in this appeal.

Dr. Tyll stated that Plaintiff's level of intellectual functioning was estimated to be within the average range, and he demonstrated no evidence of dementia on the Folstein Mini-Mental Status Exam. Dr. Tyll further stated that on the Wechsler Memory Scale-III, Plaintiff demonstrated a range of strengths and weaknesses, but overall was adequately able to consolidate, store, and retrieve information, especially when presented with a forced-choice paradigm. Dr. Tyll observed that Plaintiff appeared to be depressed and anxious, and she assessed a dysthymic disorder and a panic disorder without agoraphobia. She also noted that Plaintiff appeared to be physically ill during his appointment on September 19 (Tr. 183–86).

Dr. Tyll opined that Plaintiff had normal thought processes, judgment, and insight. He demonstrated average attention and concentration abilities during memory testing. Dr. Tyll stated that Plaintiff's "ability to provide almost verbatim responses to visual stimuli thirty minutes later is extremely noteworthy. This further suggests no major difficulties with consolidation." Finally, Plaintiff admitted to Dr. Tyll that he had never sought or received any mental health treatment.

On November 8, 2004, Brent Decker, Ph.D., conducted a psychological consultation at the request of Plaintiff's attorney. Dr. Decker assessed a major depressive disorder, recurrent, moderate severity, and a panic disorder with agoraphobia (Tr. 244–46). Dr. Decker opined that Plaintiff's impairment met Listing 12.04 of the Social Security Adult listings, but he provided no medical basis for this conclusion (Tr. 247–49). Dr. Decker also enumerated disabling mental work-related limitations, particularly regarding Plaintiff's abilities to work around others, maintain attention and concentration, and tolerate work stress (Tr. 250–53).

At the request of the Division of Disability Determination, Robert S. Kline, Psy.D., conducted a psychological consultative examination on March 14, 2005. Dr. Kline indicated that he had reviewed the past psychological report prepared by Dr. Tyll, and he administered additional psychological tests. Dr. Kline observed Plaintiff to be a robust and polite individual with no speech problems, no history of head injury, and no history of mental health inpatient treatment. Dr. Kline noted Plaintiff's use of Lexapro and his indifference regarding its effectiveness. Plaintiff exhibited some pain behaviors during the evaluation and had a depressed affect, but he attended moderately well to the interview and testing sessions.

Dr. Kline diagnosed a dysthymic disorder and a panic disorder without agoraphobia, and he opined that Plaintiff had no mental work-related limitations. Dr. Kline observed that Plaintiff denied psychiatric impairment, aside from occasional periods of anxiety and a low level experience of depression. He noted that Plaintiff's subjective complaints of mood disturbance and anxiety attacks that interfered with his ability to function in domestic and social settings, as well as the demands of daily life, were uncorroborated. Further, his test results indicated that Plaintiff amplified the severity of his impairment. Specifically, Dr. Kline determined that Plaintiff's test results on the Wechsler Memory Scale-III, did not represent a valid estimate of his memory ability, particularly considering Plaintiff's invalid test results on the Minnesota Multiphasic Personality Inventory-II (MMPI-II). Plaintiff's validity indicator configuration on the MMPI-II was such that was generally produced by individuals who have attempted to emphasize the severity of their problems. Dr. Kline stated that "an individual that was truly functioning at a level reflected in Mr. Parsons' [MMPI-II] would be so overwhelmed by the sequelae of severe mental illness that they would be unable to provide for even minimal personal needs, much less attend a clinical interview and complete an extensive testing measure" (Tr. 254–61).

C.     Other Information Within Plaintiff's Claim File

William Himadi, Ph.D., a reviewing physician, completed a Psychiatric Review Technique form on December 4, 2002 (Tr. 187–200). Plaintiff's psychiatric condition was evaluated under Section (or "Listing") 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (Affective Disorders) and Section 12.06 (anxiety-related disorders) (Tr. 187). Dr. Himadi opined that Plaintiff's condition(s) did not satisfy the diagnostic criteria of the Listings, specifically noting that the evidence did not establish the presence of the "C" criteria of either Listing (Tr. 190, 192, 198). As a result of Plaintiff's disorders, however, Dr. Himadi noted that Plaintiff would have mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of deterioration or decompensation (Tr. 197).

On the same day, Dr. Himadi also completed a Mental RFC Assessment form (Tr. 201–03). Dr. Himadi was asked to evaluate Plaintiff's mental abilities in the following areas: understanding and memory (with three specific mental abilities to be rated in this category), sustained

concentration and persistence (eight abilities), social interaction (five abilities), and adaptation (four abilities) (*id.*). In each category, Dr. Himadi was given the following choices: not significantly limited, moderately limited, markedly limited, no evidence of limitation in the category, or not ratable on available evidence (*id.*). In eighteen areas Dr. Himadi found that Plaintiff was "not significantly limited," and in two areas he found only moderate limitations; he found no marked limitations (*id.*).

V. DISCUSSION

The issues raised by Plaintiff in this appeal concern the ALJ's consideration of his mental impairments. Plaintiff generally contends that the ALJ erred in failing to find his depression and panic disorder severe at step two, erred in "making a credibility determination regarding the evaluating psychologists," and erred in failing to develop the record regarding Plaintiff's mental impairments[5] (Doc. 14 at 11). In support of his assertions, Plaintiff specifically alleges that the ALJ erred in discounting the opinions of Dr. Tyll and Dr. Decker, and conversely, erred in finding that Dr. Kline's opinion was well supported and credible (*id.* at 14–15). Next, Plaintiff contends the ALJ erred in failing to consider or even mention the report/opinion of a state agency psychologist finding Plaintiff's depression and anxiety severe, and finding "moderate limitations the area of the ability to maintain attention and concentration for extended periods as well as the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods" (*id.* at 16).

A. Dr. Tyll

---

[5]Although Plaintiff alleged initially in the "Issues for Review" section of his memorandum that the ALJ erred in failing to develop the record, he did return to this claim or provide any argument in support of it elsewhere in the memorandum (*see* Doc. 14 at 11 (issues for review), 13–18 (argument)). Although Plaintiff's specific contention is therefore unclear, the undersigned concludes that the record was fully developed in the instant case. The seminal cases in this circuit on the ALJ's duty to develop the record are Ford v. Sec'y of Health and Human Serv's, 659 F.2d 66 (5th Cir. Unit B Oct. 15, 1981) and Reeves v. Heckler, 734 F.2d 519 (11th Cir. 1984). Both held that it is not necessary for the ALJ to order a consultative examination unless the record established that such an examination was necessary to enable the ALJ to make a decision. Where the ALJ has sufficient information to decide the case, however, he can do so. Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to a decision, no showing of prejudice is made). Here, the court notes that Plaintiff was referred to two different agency psychologists for consultative examinations, in addition to being referred to another by his attorney.

In discounting part of Dr. Tyll's opinion, the ALJ noted that in September 2002, Plaintiff reported to her that he had no history of mental health treatment (Tr. 18, 184). A claimant's failure to seek treatment is a proper factor for the ALJ to consider. *See* Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, it is proper for ALJ to consider use of painkillers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing). Furthermore, absence of treatment indicates that a mental impairment is non-severe. *See, e.g.*, Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992). The ALJ also noted Dr. Tyll's observation that Plaintiff's thought processes were logical, clear, coherent, and goal-directed, as well as Plaintiff's report that he was able to take care of himself and his household (*see* Tr. 18). The ALJ found Dr. Tyll's opinion to be "generally credible" and accepted her diagnosis of "depressive and anxiety related disorders" (*id.*). The only opinion specifically rejected by the ALJ was Dr. Tyll's assignment of a Global Assessment of Functioning (GAF) score of 45,[6] but he also appears to have discredited the results of the Beck Depression Inventory (BDI) administered to Plaintiff (*id.*).

### 1. GAF Score

Initially, the court notes that despite assigning Plaintiff a GAF of 45, Dr. Tyll estimated that Plaintiff had average intelligence (Tr. 184), and as noted by the ALJ, she stated that Plaintiff demonstrated no significant memory deficit, and he had normal thought processes, judgment, and insight (Tr. 18). Additionally, Plaintiff demonstrated average attention and concentration abilities during memory testing, and his ability to provide almost verbatim responses to visual stimuli was "extremely noteworthy" to Dr. Tyll — suggesting no major difficulties with consolidation (*id.*). Moreover, Plaintiff scored 29 out of a possible 30 points on the Folstein Mini-Mental Status Exam, suggesting no evidence of dementia, and he was oriented to time, person, place, and situation during the examination (Tr. 184). Finally, as noted by the ALJ, Dr. Tyll admittedly based her GAF assessment on Plaintiff's "appearance and subjective complaints on the Beck Depression Inventory,

---

[6]GAF is the overall level at which an individual functions, including social, occupational, academic, and other areas of personal performance. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994). It may be expressed as a numerical score. *Id.* at 32. A score between 41 and 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*

with no supportive objective medical findings during the evaluation" (Tr. 18) (emphasis added). Indeed a review of Dr. Tyll's report reveals her statement that "given the lack of corroborating documentation, an estimate of reliability of [Plaintiff's] self-report cannot be provided" (Tr. 183). *See* Vuxta v. Comm'r of Social Sec., 194 Fed. Appx. 874, 877 (11th Cir. 2006) (providing greater weight to the report of a medical expert whose records reflected a test for determining the veracity of a claimant's subjective complaints of psychological symptoms).[7] Moreover, Dr. Tyll noted that Plaintiff presented as "very physically ill" — to the extent she recommended hospitalization, but Plaintiff decided to go home instead (Tr. 186).

Additionally, the court notes that Dr. Tyll was not a treating physician. She was a consulting examiner who met with Plaintiff on two occasions before rendering her opinion. As such, her opinions are not entitled to the same degree of weight as that of a treating physician. *See* McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); 20 C.F.R. § 404.1527(d). Moreover, the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole. *See* Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)). "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (Former 5th Cir. Unit B Nov. 1981). Here, the ALJ did not entirely reject Dr. Tyll's opinion; he merely rejected those parts of the opinion (e.g., the GAF score) that were inconsistent with other evidence. The ALJ provided his reasons for doing so, and those reasons have substantial support in the record.

Furthermore, a GAF score, without evidence that it impaired the ability to work, does not establish an impairment. *See* Camp v. Barnhart, 103 Fed. Appx. 352, 354 (10th Cir. 2004). The assignment of a GAF score is the last part (or axis) of a mental health practitioner's statement of a diagnosis, and is intended to rate a patient's current general overall functioning, which is useful in tracking a patient's progress in global terms. Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1984) (DSM-IV). The GAF scale is intended for use by practitioners in making treatment decisions, *see* DSM-IV-TR at 32–33, and neither Social Security regulations nor case law require

---

[7]The undersigned cites Vuxta only as persuasive authority and recognizes that the opinion is not considered binding precedent. *See* U.S. Ct. of App. 11th Cir. Rule 36–2, 28 U.S.C.A.

Case No. 5:06cv217/RS/EMT

an ALJ to determine the extent of an individual's mental impairment based solely on a GAF score. In fact, the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." *See* 65 Fed. Reg. 50746–01, 50764–65, 2000 WL 1173632 (August 21, 2000). Accordingly, the ALJ did not err in failing to fully credit Dr. Tyll's GAF score.

2.     Beck Depression Inventory

At Dr. Tyll's request, Plaintiff completed the BDI and obtained a score of 31, which is indicative of "severe depression" (Tr. 184). Plaintiff contends that the ALJ erred in not relying upon this score to determine that Plaintiff suffered from a severe mental impairment.

As noted *supra*, the results of the BDI were based upon Plaintiff's subjective complaints, and those complaints were accompanied by, in Dr. Tyll's words, "a lack of corroborating documentation [and therefore] an estimate of reliability of the claimant's self-report cannot be provided" (Tr. 18). The ALJ concluded, however, that Plaintiff's complaints were not entirely credible. In evaluating Plaintiff's complaints, the ALJ complied with the regulations and considered the factors set forth at 20 C.F.R. § 404.1529 and SSR 96-7p (*see* Tr. 22). In pertinent part, the ALJ noted that Plaintiff had no history of mental health treatment (Tr. 18). The ALJ also considered Plaintiff's attempts to work after the alleged onset of disability (Tr. 17). Plaintiff's desire to return to work is inconsistent with disability and suggests that he did not view him mental impairments as disabling. *See* Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir. 1994) (claimant's statements that he was seeking work are inconsistent with disability). Moreover, as discussed more fully *infra*, the ALJ noted Plaintiff's report to Dr. Kline, in which he denied "'psychiatric impairment' aside from 'occasional periods of anxiety and a low level experience of depression,'" as well as Dr. Kline's observation that Plaintiff's complaints were uncorroborated and his belief that Plaintiff amplified the severity of his impairment (Tr. 20). Thus, the ALJ articulated reasons, supported by the record, for finding Plaintiff less than fully credible. As the BDI result was based on Plaintiff's subjective complaints, which were properly discredited by the ALJ, the ALJ did not err in failing to assign the result great weight. Moreover, to the extent the BDI result indicates "severe depression" — the result is not binding on the Commissioner (even if Plaintiff's complaints

were fully credible).  First, whether or not an impairment is severe is determined by the Commissioner's regulations, and the regulations use different criteria than the BDI in determining whether an impairment is severe.  Second, the question of whether a claimant has a severe impairment or is disabled (that is, unable to work within the strictures of the Social Security Act) is reserved to the Commissioner, not to a physician.  *See* 20 C.F.R. § 404.1503.  Thus, the ALJ did not err in failing to find Plaintiff's depression severe on the basis of the BDI result.

      B.      Dr. Decker

At the request of Plaintiff's attorney, Plaintiff was evaluated by Dr. Decker on November 8, 2004.  Plaintiff reported to Dr. Decker that he had never been in any type of counseling (Tr. 244).  Dr. Decker's "diagnostic impression," which appears to be based on Plaintiff's subjective complaints, was "Major Depressive Disorder, Recurrent, Moderate Severity; Panic Disorder with Agoraphobia; and Pain Disorder with both Psychological and Physiological Factors" (Tr. 246).  On November 16, 2004, Dr. Decker filled out a form that was faxed to his office by Plaintiff's counsel (*see* Tr. 247).  Dr. Decker indicated on the preprinted form that he has reviewed the "Social Security Adult listings for Affective Disorders, Listing 12.04 A, and B," and finds that Plaintiff meets "listing [unintelligible], A, B, C, D, E, F, G" (*id.*).  On the bottom half of the form, a preprinted line states: "The medical basis for this conclusion is:", but Dr. Decker left this portion of the form blank, providing no medical basis for his conclusion (*see id.*).  Dr. Decker's records also include a preprinted form titled "Impairment Listing 12.04," which appears to be a copy of Listing 12.04 (*see* Tr. 248).  However, Dr. Decker's notation (i.e., that Plaintiff meets listing "[unintelligible], A, B, C, D, E, F, G") appears to only address the first part of the Listing (the "paragraph A criteria," which establish a medically documented depressive syndrome and are listed alphabetically as "a" through "i").  To meet Listing 12.04, Plaintiff would also have to satisfy the "paragraph B criteria," a set of impairment-related functional limitations, which are listed numerically as "1" through "4"(*see* Tr. 248; Listing 12.04).  Dr. Decker, however, did not indicate which, if any, functional limitations Plaintiff experienced (*see* Tr. 248); thus, it is certainly not clear to this court that Dr. Decker understood the requirements of the Listing, despite his indication that he had reviewed the Listing.  Dr. Decker did complete a "Questionnaire as to Mental [RFC]," but the questionnaire does not correspond exactly to the paragraph B criteria of the Listing, although there is some overlap.

Importantly, however, Dr. Decker generally indicated that Plaintiff had only moderate or mild functional impairments; whereas to meet the Listing, a claimant must have marked impairments or repeated episodes of decompensation (*see* Listing 12.04; Tr. 250–53).

In discounting Dr. Decker's opinions, the ALJ noted that they were not supported by sufficient objective medical findings — indeed, even when given a chance to provide a "medical basis" for his conclusion, Dr. Decker declined to do so (Tr. 19, 247). The ALJ further noted that Dr. Decker's opinions were inconsistent with other medical and nonmedical evidence in the file, including Dr. Kline's opinions and Plaintiff's activities of daily living such as living alone, driving a car, maintaining his own household, and having no difficulties dressing, grooming, bathing, shopping, laundering, cooking, or feeding himself (as reported to Dr. Tyll) (Tr. 19). Although Plaintiff's descriptions of his activities show some limitations, the ALJ is not required to believe all of a claimant's assertions concerning his activities. *See* Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996). Furthermore, the ALJ may properly consider daily activities when evaluating subjective complaints of disabling pain and other symptoms. *See* Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).

In further discounting Dr. Decker's opinions, the ALJ concluded, as does the undersigned, that Dr. Decker's opinions were based on Plaintiff's subjective complaints (Tr. 19). Moreover, although Dr. Decker appears to have administered the BDI, a Trauma Symptom Inventory, and a Mini-Mental Status Exam, the validity of these tests depends upon the accuracy of the information provided by Plaintiff. For the reasons discussed *supra*, the ALJ properly found Plaintiff's subjective complaints less than fully credible, which correspondingly invalidates the test results. The ALJ additionally noted that "there is no indication that Dr. Decker was provided any of [Plaintiff's] actual treating records for his physical problems or any other evidence to corroborate his statements" (Tr. 19); *cf.* Tr. 254–57 (report of Dr. Kline, specifically noting that he had reviewed a "referral package" prior to his evaluation of Plaintiff that included the past psychological report and diagnoses of Dr. Tyll). The court also notes Plaintiff's report to Dr. Decker, which was in November 2004, that he still had received no mental health treatment of any kind (*see* Tr. 244). As previously noted, the absence of treatment indicates that a mental impairment is non-severe. *See, e.g.*, Williams, 960 F.2d at 89. Finally, as the court is well aware, the ALJ certainly was not required

to accept Dr. Decker's opinion that Plaintiff met Listing 12.04 — this is especially so in the instant case, as Dr. Decker generally indicated that Plaintiff had only mild or moderate functional limitations, which is inconsistent with his opinion that Plaintiff met the Listing. Thus, the ALJ did not err in discounting the opinion of Dr. Decker

    C.    Dr. Kline

Plaintiff contends the ALJ erred in finding Dr. Kline's opinion credible (Doc. 14 at 14). Dr. Kline, like Dr. Tyll and Dr. Decker, was a one-time examining physician; thus, his opinion would initially be entitled to the same weight as theirs.[8] *See* 20 C.F.R. § 404.1527 (every medical opinion should be evaluated, and unless a treating source's opinion is given controlling weight, the following factors are considered in deciding the weight to be given to any medical opinion: examining versus non-examining (Dr. Tyll, Dr. Decker, and Dr. Kline are all examiners, and their opinions are given more weight than a non-examining source); treatment relationship (treating sources are given more weight), including length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship; supportability of the opinion(s); consistency with the record as a whole; specialization; and "other factors"). Here, Plaintiff has no treating mental health source, so the opinions of Drs. Kline, Tyll, and Decker essentially start out being worthy of equal weight, and the ALJ is required to consider each of their opinions. *Id.*

In considering Dr. Kline's opinion, the ALJ found it to be more credible than those of Dr. Tyll and Dr. Decker, and he provided reasons for this finding. First, the ALJ noted that Dr. Kline had reviewed other evidence before he examined Plaintiff (Tr. 19). Next, the ALJ noted that Dr. Kline examined Plaintiff in March 2005, and Plaintiff still had not sought any mental health treatment (*see id.*).[9] The ALJ also summarized some of Dr. Kline's observations, including that

---

[8] Although Plaintiff seems to suggest that because Plaintiff saw Dr. Tyll on two occasions, her opinion is entitled to more weight (*see* Doc. 14 at 15), the court cannot agree. The record reflects that Plaintiff saw Dr. Tyll on two occasions, but only because Dr. Tyll did not conclude her examination on the first date. Despite the examination being conducted over the course of two meetings instead of one, Dr. Tyll was not a treating physician, and her opinion is entitled to the same amount of weight as any other consulting examiner's opinion.

[9] Plaintiff reported to Dr. Kline that he saw Dr. Decker "on a regular basis" for treatment of a mood disorder (Tr. 254), but Plaintiff's report is inconsistent with the record. As previously noted, Plaintiff saw Dr. Decker for a one-time consultative examination at the request of Plaintiff's attorney. Nevertheless, Dr. Kline noted that Plaintiff had no form of any inpatient mental health treatment (*id.*).

Case No. 5:06cv217/RS/EMT

Plaintiff was polite, had no speech problems, and attended moderately well to the interview (Tr. 20). Dr. Kline also noted that Plaintiff articulated well and had no problem understanding basic commands, comments, or questions (Tr. 255). Similarly, Dr. Kline observed that Plaintiff's "content of thinking" was "linear and logical" (*id.*). Additionally, the ALJ noted Dr. Kline's report that Plaintiff denied psychiatric impairment aside from occasional periods of anxiety and a low level experience of depression (Tr. 20; *see also* Tr. 256).

In further analyzing Dr. Kline's opinion, the ALJ noted that Dr. Kline administered the Wechlser Memory Scale-III (WMS-III), which was previously administered to Plaintiff by Dr. Tyll (*see* Tr. 20, 255–56). It was noted that Plaintiff's performance on the WMS-III was in "stark contrast" to his earlier performance, for which there were two possible explanations according to Dr. Kline — either Plaintiff's memory was getting worse, and he was now beginning to show obvious limitations, or Plaintiff was not fully honest in his responses to the test questions (Tr. 255–56). Dr. Kline concluded that the recent test results were not a valid estimate of Plaintiff's memory ability (Tr. 256). As noted by the ALJ, Dr. Kline opined that Plaintiff had "attempted to emphasize the severity" of his problems (Tr. 20, 256). Further, the ALJ noted that according to Dr. Kline a person who scored as Plaintiff did on the MMPI-II, another test administered by Dr. Kline, "would be so overwhelmed by the sequelae of severe mental illness that they would be unable to provide for even minimal personal needs, much less attend a clinical interview and complete an extensive testing measure" (*id.*). *See* Vuxta, 194 Fed. Appx. at 877 (11th Cir. 2006) (symptom exaggeration is a relevant consideration in weighing the opinions of different medical experts); *see also* Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997) (exaggeration of symptoms is a factor to be weighed in evaluating subjective complaints of pain). Thus, Dr. Kline concluded that the results of the MMPI-II were invalid, because Plaintiff was clearly able to attend to his interview (as well as Dr. Tyll's and Dr. Decker's) and complete testing measures (Tr. 256). Dr. Kline's conclusion is further supported by record, considering that just nine days after Plaintiff was examined by Dr. Kline, Dr. Gilani noted during a physical consultative examination that Plaintiff

communicated normally, his memory was intact, he did not seem to be in any physical or mental distress, and his mental status was clear (Tr. 263).[10]

Plaintiff makes much of the fact that Dr. Kline concluded that test results were invalid, arguing that it was improper to rely on Dr. Kline's opinions after his testing "produce[d] invalid testing scores" (Doc. 14 at 15), but Plaintiff misses the point. Plaintiff's exaggeration <u>caused</u> the test results to be invalid. Moreover, Dr. Kline's personal observations of Plaintiff and the conclusions in Dr. Tyll's records were inconsistent with the test results. Furthermore, unlike Dr. Tyll and Dr. Decker who did not assess the validity of Plaintiff's subjective complaints and who based their opinions in large part on those complaints, Dr. Kline specifically noted that test results compelled the conclusion that Plaintiff had "amplified the severity of his impairment" (Tr. 257). *See* Vuxta, 194 Fed. Appx. at 877 (11th Cir. 2006) (providing greater weight to the report of a medical expert whose records reflected a test for determining the veracity of a claimant's subjective complaints of psychological symptoms). Despite Plaintiff's symptom amplification, Dr. Kline recognized that Plaintiff indeed had some mental impairment, as he assessed Plaintiff with dysthymic disorder and panic disorder (Tr. 256). He found, however, that these conditions would not interfere with Plaintiff's ability to perform work-related activities (Tr. 259–61), and this opinion was credited by the ALJ. Specifically, the ALJ concluded that, although Plaintiff has depressive and anxiety-related disorders, they are not severe within the meaning of the regulations and do not impose more than minimal limitations upon Plaintiff's ability to work (Tr. 20). The ALJ did not err in accepting Dr. Kline's opinions, as he stated well-grounded reasons for finding the opinions credible, and the ALJ's conclusions are not inconsistent with the record as a whole.

D.      ALJ's Failure to Mention the Report of a State Agency Psychologist

Plaintiff contends the ALJ erred in "fail[ing] to consider, evaluate, or explain why he has completely disregarded the State agency psychological consultant's opinion that [Plaintiff's] depression and anxiety are severe" (Doc. 14 at 16). Although Plaintiff makes no reference to the transcript to identify the opinion he claims was not considered, he notes that the report containing the opinion was dated December 4, 2002 (*id.*). Thus, turning to the contents of the transcript, the

---

[10]Dr. Lewandowski also conducted a physical consultative examination and made similar observations regarding Plaintiff's memory (*see* Tr. 160–62).

Case No. 5:06cv217/RS/EMT

only reports dated December 4, 2002 are those of Dr. Himadi (*see* Tr. 2 (List of Exhibits), Tr. 187–00, Tr. 201–04), which are fully described, *supra*, in Part IV.C. In pertinent part, Dr. Himadi found that Plaintiff's mental impairments did not meet the listings, and they imposed no significant functional limitations. Thus, although it would have been better for the ALJ to mention this report, his failure to do so does not constitute reversible error.

First, the opinions of Dr. Himadi are supportive of the ALJ's ultimate conclusion (as well as Dr. Kline's) that Plaintiff's mental impairments did not interfere with his ability to work. Specifically, Dr. Himadi noted that, "[d]espite some possible detriments in his memory functions, he retains sufficient aptitude and cognitive skills for simple routine task performance on a sustained basis" (Tr. 199). Second, Dr. Himadi is a non-examining source, and his opinion would be entitled to less weight than any of the others that were evaluated by the ALJ. Third, although Plaintiff contends Dr. Himadi found "moderate" functional limitations in two areas, this is not inconsistent with the ALJ's finding that Plaintiff's mental impairments were non-severe (*see, e.g.*, the Paragraph B Criteria of Listings 12.04 and 12.06, requiring "marked" functional difficulties). Moreover, Plaintiff neglected to mention that Dr. Himadi further found that Plaintiff was "not significantly limited" in eighteen areas of mental functioning and had no "marked" limitations (*see* Tr. 201–02). Accordingly, it was harmless error for the ALJ to fail to mention this report. *See* East v. Barnhart, 197 Fed. Appx. 899, 901 n.3 (11th Cir. 2006) (failure to mention psychologist's report harmless where findings in report were consistent with ALJ's ultimate determination); Pichette v. Barnhart, 185 Fed. Appx. 855, 856 (11th Cir. 2006) (ALJ's erroneous statements found to be harmless where ALJ applied proper legal standard); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (misstatements harmless where ALJ applied correct legal standard despite the first misstatement, and the second misstatement was irrelevant).

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists. Although evidence in the record arguably exists to support a decision contrary to that reached by the ALJ, the court is limited in its inquiry and is not empowered to reweigh the evidence. *See generally* Martin, 894 F.2d at 1529 (the

reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner); Sewell, 792 F.2d at 1067 (even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence).

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 24th day of January 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**